ERVIN, J.
This is an appeal from a final workers’ compensation order wherein Arthur Begyn, appellanVclaimant, asserts the judge of compensation claims (JCC) erred in (1) denying his claim for permanent total disability (PTD) benefits; (2) refusing to adjust his average weekly wage (AWW) by including the cost to the employer/carrier (E/C) for health insurance provided to claimant at the time of his separation from employment, rather than at the time of his compensable accident; (3) denying his request for authorization of a medical provider on the ground that he had not exhausted the managed-care grievance procedures; and (4) denying his request for penalties, interest, costs and attorney’s fees (PICA). In that we conclude competent, substantial evidence (CSE) supports the JCC’s denial of PTD benefits, we affirm as to this issue without further comment. Based on that disposition, the second issue concerning claimant’s AWW is rendered moot, because there is no question in controversy regarding the payment of any other classification of indemnity benefits. We reverse, however, the remaining two issues and remand the case for further consistent proceedings.
Regarding the third issue, the JCC determined that he had no jurisdiction to decide claimant’s request for authorization of a medical-care provider, because claimant failed to present evidence that he had exhausted the managed-care grievance procedures before he filed his petition for benefits on May 21, 2001. See § 440.192(3), Fla. Stat. (1997) (“the employee must exhaust all managed care grievance procedures before filing a petition for benefits”); Castro v. AT & T Wireless Servs., 780 So.2d 917 (Fla. 1st DCA 2000) (holding that a JCC lacks jurisdiction to consider a petition filed before the claimant has exhausted the managed-care grievance procedures). Appellant argues that the JCC erred in so ruling in that the E/C failed to comply with the obligations required by section 440.134(14), Florida Statutes (Supp.1998), directing it to disclose to the injured worker in writing the provisions of the managed-care plan, including the grievance procedures. Additionally, claimant argues that there is no CSE to support the JCC’s ruling that he failed to exhaust the grievance procedures before filing his petition for benefits.
The record bears out appellant’s argument. Claimant’s unrefuted testimony was that he had no idea what the procedures were for requesting a doctor under the managed-care plan or what the grievance procedures were, and that no one had sent him an informational booklet of the grievance procedures. The record also shows that on January 22, 2001, claimant’s attorney made his first request by letter to Karey Ross, the insurer’s claims adjustor, stating: “I am requesting authorization for [c]are, and treatment by a new physician. I am enclosing Dr. Jackson’s correspon *338 dence within which he terminates the care of my client.” Upon receiving no response, counsel thereafter wrote to Ross on April 20, 2001, asking for “authorization for an evaluation, and treatment if necessary, by Michael N. Fulton, MD.” On each occasion, counsel requested a response in ten days. Adjustor Ross admitted that she had received these letters, and had forwarded the first letter, and possibly the second (she could not remember), to Pro-tegrity, the managed-care provider. Frustrated by the failure of either the insurer or the managed-care provider to act on the requests, claimant filed his petition for benefits on May 21, 2001.
In reaching his decision that claimant had not exhausted the grievance procedures within the managed-care plan before filing the petition, the JCC overlooked the overarching legislative intent that the workers’ compensation law be interpreted in order “to assure the quick and efficient delivery of disability and medical benefits to an injured worker and to facilitate the worker’s return to gainful reemployment.” § 440.015, Fla. Stat. (1997). That express legislative purpose both predated and postdated the creation of managed-care arrangements. It is, in fact, written into the managed-care statute itself by requiring, among other things, that such services be provided with reasonable promptness, and that grievances within the system be considered in a timely manner. See § 440.134(5)(a) & (15)(d), Fla. Stat. (Supp. 1998). In drafting this mechanism as an alternative to the formal claim procedure, the legislature clearly did not contemplate that a request for medical benefits should be ignored for a protracted period of time; yet, this is precisely what happened in the present case.
It is true that section 440.134 does not explicitly state the conditions under which the managed-care grievance procedures may be defaulted and a worker given the option of proceeding with a formal petition before a JCC. Nevertheless, the legislature has granted the Agency for Health Care Administration (AHCA) broad powers to adopt rules regulating the authorization and examination of managed-care arrangements. § 440.134(25)(a), Fla. Stat. (Supp.1998). AHCA has directed that a “detailed description of the employee complaint and written grievance procedures shall be included in educational materials provided to injured employees.” Fla. Admin. Code R. 59A 23.006(2) (emphasis added). AHCA has defined a “grievance” as “a written expression of dissatisfaction with medical care by an injured worker.... Initial written requests for medical services, second opinions, or changes in providers are not grievances.” Id. at 59A-23.002(8).
The insurer or its managed-care provider has seven days to respond to an initial request for services, second opinions, and changes in providers:
The insurer or delegated entity shall evaluate requests for medical services within seven calendar days of receipt and shall notify the injured employee of the decision to grant the request, to deny it, or to request additional information. When the insurer or delegated entity denies a request it shall notify the injured employee in writing of the denial and the right to file a grievance.... If the insurer or delegated entity fails to respond within seven calendar days of receipt of the request, the injured employee may make a complaint or file a written grievance.
Id. at 59A-23.006(4)(a). Subsection (4)(b) thereafter states that if a complaint is filed and remains unresolved after 10 days of its receipt, the worker is entitled to be informed of his or her right to file a written grievance. There is no requirement, how *339 ever, that a complaint be fled prior to pursuing a grievance. See id. at 59A-23.006(4)(c).
Different response times apply to grievances depending upon whether they are expedited. For expedited grievances, an answer is required within three days, and “the injured employee shall be considered to have exhausted all managed care grievance procedures after three days from receipt.” Id. at 59A-23.006(4)(c)(l). In the case of a grievance that is not expedited, the grievance coordinator
shall render a determination on the grievance within 14 calendar days of receipt. If the determination is not in favor of the aggrieved party the grievance coordinator shall notify the aggrieved party that the grievance is being forwarded to the grievance committee for further consideration unless withdrawn in writing by the employee or provider.
Id. at 59A-23.006(4)(c)(2). If forwarded to a grievance committee, the committee shall “render a determination within 30 calendar days of receipt of the grievance.” Id. at 59A-23.006(4)(c)(3). Once the grievance procedures have been completed, subsection (4)(c)(7) provides that “the insurer or delegated entity shall provide written notice to the employee of the right to file a petition for benefits with the Division.” If, however, a “determination on a grievance has not been rendered within the required timeframe specified in this section or other timeframe, as mutually agreed to in writing by the grieving party and the insurer or delegated entity,” the claimant “shall be considered to have exhausted all managed care grievance procedures.” Id. at 59A-23.006(4) (c)(6).
In the case at bar, neither the insurer nor its delegated entity complied with the responsibilities imposed on it. In our judgment, the complete and utter failure of the insurer and Protegrity to fulfill the duties specified in rule 59A-23.006 cannot be used as a means of raising a jurisdictional bar to a claim. Additionally, we note that while section 440.134(16), Florida Statutes (Supp.1998), provides a presumption that a claimant has received all necessary benefits under a managed-care system, the statute does not create a presumption that the E/C necessarily fulfilled its notice duties in the grievance process.
Initially, the E/C faded to provide claimant with any educational material following his injury, as required in rule 59A-23.006(2) and section 440.134(14). As previously stated, claimant made an initial request by letter dated January 22, 2001, for medical services, which the E/C failed to respond to within seven days, as required by rule 59A-23.006(4)(a). Dissatisfied with the E/C’s lack of response and without receiving any care, he next submitted a written request for authorization of Dr. Fulton by letter dated April 20, 2001. In our judgment, claimant’s second letter constituted a grievance, and the failure of the insurer and Protegrity to act within the time required under rule 59A-23.006(4)(c) creates a legal conclusion that claimant exhausted the required grievance procedures before he filed his petition for benefits on May 21, 2001.
We thérefore reverse on this point and remand with directions to the JCC to consider the claim for authorization of the care provider on its merits. Because of our disposition of the third issue, we reverse as well the denial of claimant’s request for PICA.
AFFIRMED in part, REVERSED in part, and REMANDED.
BOOTH and BROWNING, JJ., concur.